IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DUKE ENERGY CAROLINAS LLC,<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>NTE CAROLINAS II LLC, NTE CAROLINAS II HOLDINGS LLC and NTE ENERGY LLC,<br><br>    Defendants and Counterclaimants. | Civil Action No. 3:19-cv-515-MOC-DSC |

**STIPULATION AND ORDER REGARDING DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

Plaintiff and Counterdefendant Duke Energy Carolinas LLC ("Duke") and Defendants and Counterclaimants NTE Carolinas II LLC, NTE Carolinas II Holdings LLC and NTE Energy LLC (collectively, "NTE") (together with Duke, "the Parties") HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the following specifications shall govern discovery of all documents, electronically stored information ("ESI"), and any other materials and information produced by the Parties during discovery in the above-capationed action.

The Court finds that good cause supports entry of this Order and that justice so requires. Now, therefore, IT IS ORDERED:

**I. PURPOSE**

This Stipulation supplements the provisions of Rules 26 and 34 concerning discovery of electronically stored information, the Local Rules for the United States District Court for the Western District of North Carolina, and any other applicable orders and rules.

This Stipulation shall not enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under the terms of

this Stipulation is properly discoverable, relevant, or admissible in this or in any other litigation.

**II.  COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith consistent with this Stipulation.

**III.  DEFINITIONS**

The following definitions will apply in this Stipulation:

**A.  Document** means anything subject to production or inspection under Federal Rule of Civil Procedure 34(a), including (1) any document or ESI—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (2) any tangible thing.

**B.  ESI** means any electronically stored file or information created and/or kept as such, regardless of its original format, consistent with Federal Rule of Civil Procedure 34.  The parties understand that an exhaustive list of ESI types is impossible.  Some types that may be produced include: (1) email messages; (2) word processing documents, spreadsheets, and presentations; (3) files formatted for display in a web browser, for example, files with an .htm, .html, .php, or .cfm extension; (4) Adobe Acrobat files; and (5) text messages, chat logs, and the like (subject to the limitations contained in IV.L. below).

**C.  Bates Number** means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of

111733795v2

paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen characters in length.

  D. **Document Custodian** refers to current or former employees and/or other persons under the control of a party who have or had substantial knowledge and involvement in the matters in dispute between the parties and are likely to possess discoverable Documents.

  E. **Hard Copy Document** means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

  F. **Native Format** means the associated file structure defined by the original application with which an electronic file was created. For example, the Native Format associated with a Microsoft Word 2007 file is .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

**IV. PRODUCTION PROTOCOLS**

Parties will produce ESI, as far as reasonably possible, as specified below and in Table 1:

  A. **Production Format.** Parties must produce all ESI as Standard Image files with extracted text or Native Format files with extracted text.

  B. **Standard Image.** Excepted as specified below in Part IV.C, all ESI capable of ready and accurate rendering as images shall be produced as TIFF/JPG images with accompanying extracted text files (if applicable) in accordance with the attached specifications for the production of ESI. Imaged files shall show hidden content such as notes, comments, and track changes. Embedded objects will be extracted and produced as attachments to the main document. If a party believes that ESI produced in Standard Image format is not accurately or completely rendered, or otherwise is needed in native format, the parties agree to engage in discussion regarding production of discrete documents in native format.

111733795v2

**C.     Native Format**.  All ESI files in MS Excel, MS Access, QuickBooks, multimedia, and any format that is not reasonably feasible for imaging shall be produced in native format with accompanying extracted text files (if applicable) in accordance with the attached specifications for the production of ESI.  ESI produced in native format must contain the Bates number in the file name.  Additionally, native files should be accompanied by an image placeholder that contains the language, "File Produced Natively", the Bates number and confidentiality designation.  The producing party shall include accompanying metadata in the load file.  The parties agree not to remove metadata from native productions.

**D.     Load Files.**  Parties must include both metadata and image load files with each production.  The metadata load file must be produced in Concordance (.dat) format and contain fields listed in the attached specifications for the production of ESI.  The image load file must be produced in Opticon (.OPT) format.

**E.     Redacted Documents**.  Any documents redacted pursuant to section IV(L), *infra*, may be produced as either black and white Group IV single-page TIFF (300 DPI, 1 bit) or, if color is important to the document, single page color jpegs. Redacted documents will be produced with OCR text instead of extracted text.

**F.     Color Documents**. If after reviewing a black and white document, a receiving party believes that color is important to a document, the parties agree to engage in discussion regarding production of discrete documents in color.

**G.     Hard Copy Documents**.  Parties shall scan hard copy documents and produce in an electronic format in keeping with the above outlined requirements.  The parties have no duty to populate any of the agreed-upon metadata fields with respect to hard copy documents that have no preexisting metadata. For hard copy documents, only the following fields will be provided:

111733795v2

BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN.

**H.     Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

**I.     De-duplication**. The parties will use their best efforts to globally de-duplicate documents as necessary prior to producing them; meaning that, exact duplicates of a document (*i.e.*, all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced. However, documents that are exact duplicates, but are included in different families (*i.e.* attached to different parents) will be produced with their respective family members to the extent these documents are responsive and not protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection.

**J.     Email Threading**. The parties will use email threading, such that only the most comprehensive email threads, and all unique attachments, will be reviewed and then produced to the extent they are responsive and not protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection.

**K.     Databases**.  When non-privileged, responsive ESI is contained in a database, in lieu of producing the entire database the producing party may query the database and produce a report containing responsive information. Such reports will be produced in an exportable electronic file in a reasonably usable format (e.g., Excel or .csv), except where redaction is required to protect confidential, proprietary, or trade secret information, in which case the reports shall be produced as redacted TIFF files in accordance with this Stipulation. Upon review of any report, the requesting party may make reasonable requests for additional information to needed to understand

5

Case 3:19-cv-00515-MOC-DSC   Document 50   Filed 12/22/20   Page 5 of 11

111733795v2

or interpret the report.

**L. Voicemail and Mobile Devices.** The parties agree that electronic data such as voicemails, contact data, and text or ephemeral messages sent to or from PDAs and mobile devices are presumptively deemed not reasonably accessible and need not be preserved and collected except to the extent such data is routinely saved or backed up to a cloud server or other reasonably accessible location, unless a party knows or has good reason to believe that such repositories may contain unique and discoverable ESI that would not otherwise be preserved and collected under this Protocol. For purposes of this provision, a laptop computer is not a "mobile device."

**M. Metadata Fields**. Parties must produce metadata for each of the fields identified in the attached specifications for the production of ESI to the extent such metadata exists or is reasonably extractable.

**N. No Obligation to Convert Third–Party Subpoena Productions**. The parties agree that any document production received from a third party in response to a subpoena shall be produced in the format in which it was received.

**O. Redaction**. The parties reserve the right to remove or redact (so long as the removing or redacting party provides notice to the receiving party of such removal and redaction and clear indication of such redaction in the document(s) containing the redaction) information from documents and files. The following shall be information presumptively entitled to redaction prior to production ("Permissible Redactions"): Social Security numbers (last four digits to remain unredacted), bank account numbers (last four digits to remain unredacted), personal health information, and information protected from disclosure by the attorney-client privilege, work-product doctrine, or other applicable privilege or protection. Should a party desire to redact information that is of a nature other than as set out on the aforementioned list, the party must

111733795v2

provide a description of the redacted materials and an explanation for the redaction within a reasonable time after the production of the document; the parties shall confer regarding disagreements over any such redactions; in the event that the parties are unable to resolve disputes over redactions, then the Court shall resolve such dispute, with the party making the redaction bearing the burden of establishing that the redaction is appropriate.

      **P.**    **Method of Transfer**.  The parties agree that documents produced will be made available via secure file transfer.

      **Q.**    **Inaccessible Documents.** If a party believes that potentially responsive ESI is not reasonably accessible due to undue burden or cost, it shall disclose the general nature of such ESI and the reason(s) why it is not reasonably accessible. The parties agree to meet and confer in good faith to resolve any disputes regarding the burden and cost of capture and/or retrieval, including specifically the possibility of shifting or sharing the cost.

**V.**    **SOURCES, CUSTODIANS, AND METHODS OF SEARCHING FOR ESI**

    **A.**    Except as otherwise agreed upon in this Stipulation, the Parties will meet and confer in an effort to agree upon the following:

      1.    List of Document Custodians with respect to which Documents will be preserved and collected.

      2.    List of Noncustodial Locations (such as shared drives or servers) with respect to which Documents will be preserved and collected.

      3.    List of search terms necessary to locate ESI likely to contain discoverable information. Focused terms and queries, rather than overbroad ones, shall be employed.  The parties will also attempt to work cooperatively to resolve issues with searches (such as reach consensus on a date range to be used, list of custodians, which data sources to search, etc.).

111733795v2

Notwithstanding prior agreement on the search terms to be used for electronic searches, should a search produce an unreasonably large number of non-responsive or irrelevant results, the parties shall (at the producing party's request) meet and confer to discuss ways to refine or revise the search terms.

**B.** The agreed-upon lists of Document Custodians, Noncustodial Locations, and search terms establish the universe of ESI that the parties agree to review for potential production. ESI within that universe will be produced to the extent it is responsive to discovery requests served in this matter, except to the extent it is withheld based on a validly lodged objection or as otherwise permitted under the Federal Rules of Civil Procedure.

**C.** The parties agree to negotiate in good faith, as needed, to refine or supplement the list of Document Custodians or search terms.

## VI. PROTECTIVE ORDER

Nothing in this Stipulation shall be deemed to limit, modify, or override any provision of any Protective Order on Confidentiality in the above-captioned action.

**SO ORDERED**.   Signed: December 22, 2020

_____
David S. Cayer
United States Magistrate Judge

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD**

Dated: December 22, 2020

    s/ Jason D. Evans
Jason D. Evans (N.C. Bar No. 27808)
Troutman Pepper Hamilton Sanders LLP
301 S. College St., 34th Floor
Charlotte, NC 28202
(704) 916-1502
jason.evans@troutman.com

Douglas G. Green (admitted *Pro Hac Vice*)
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6212
dgreen@steptoe.com

*Counsel for Plaintiff/Counterdefendant*

Dated: December 22, 2020

    s/ Marguerite S. Willis
Marguerite S. Willis (N.C. Bar No. 8045)
Nexsen Pruet, PLLC
227 West Trade Street, Ste. 1550
Charlotte, NC 28202
(704) 339-0304

John F. Baughman (admitted *Pro Hac Vice*)
JFB Legal PLLC
500 East Main Street, Ste. 1410
Norfolk, VA 23510
(347) 241-6347
jbaughman@jfblegal.com

*Counsel for Defendants/Counterclaimants*

9

Case 3:19-cv-00515-MOC-DSC   Document 50   Filed 12/22/20   Page 9 of 11

111733795v2

# TABLE 1: SPECIFICATIONS FOR THE PRODUCTION OF ESI

**Production Folders**

Production data should be organized in the folders listed below. Load files should be in the root folder of the production. There should be no more than 1,000 files per subfolder.
- IMAGES
- NATIVES
- TEXT

**Required Metadata and Database Fields**
- Metadata load file should be encoded in Unicode and provided in Concordance delimiters and format (.DAT):

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value (Do not follow with space) | ; | 59 |
| Nested Value | \ | 92 |

- The first row of each metadata load file should contain the field names requested in the attached table or as specified in the ESI Protocol. **All requested fields should be present in the metadata load file regardless of whether data exists**. Field order must remain consistent in subsequent productions.
- Date format should be MM/DD/YYYY (06/30/2019).
- All attachments should sequentially follow the parent document/email.

**Images**
- Single-Page images should be provided with an Opticon Image load file (.OPT).
- Format should be Black-and-white Group IV Single-Page TIFFs (300 DPI, 1 bit).
- If color images are required, they must be provided in single-page .JPG format.
- TIFF/JPG images should be provided for all documents.
- When a file is provided natively, a slip sheet must be supplied in the appropriate IMAGES folder and must contain BEGBATES, Confidentiality Designation, and "File Produced Natively."
- Image file names should match the page identifier for that specific image and end with the appropriate extension.
- File names cannot have embedded spaces, commas, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (, & \ / # + % ! : * ? " < > | ~ @ ^).

**Native Documents**

Native file names should be named for the BEGBATES entry for that specific record.

**Text**
- Text should be provided for each file in separate text file (.txt) with document level text and a relative link to the file in the DAT load file. Extracted text or OCR text should not be contained directly within the DAT file.
- Text files should be named for the BEGBATES entry for that specific record.
- All records should have a text file even if the file has no text.
- All text should be processed and delivered in Unicode. If any other text encoding is present in the deliverable, please indicate that in separate communication. Text files for redacted documents should be the OCR text of the document as redacted.

111733795v2

The following metadata fields shall be produced if reasonably available. The parties understand that they are under no obligation to manually compile or otherwise create the content described in the listed fields for email and non-email ESI. For scanned hard copy documents, only the following accompanying metadata fields need to be produced: BegBates, EndBates, BegAttach, EndAttach and Custodian.

| Field Name | Field Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| BegBates | Beginning Bates number | Y | Y | Y |
| EndBates | Ending Bates number | Y | Y | Y |
| BegAttach | Beginning Bates number of the first document in an attachment range | Y | Y | Y |
| EndAttach | Ending Bates number of the last document in an attachment range | Y | Y | Y |
| Custodian | Name of the primary custodian the file was sourced from; This field populated only for the "primary" custodian. | Y | Y | Y |
| All Custodians | Name(s) of any custodians of any deduplicated version(s) of the document. | Y | Y | |
| FileName | File name of the original file name | Y | Y | |
| FileExt | Native File extension | Y | Y | |
| Author | Author field extracted from the metadata of a non-email document | | Y | |
| Email Subject | Subject line extracted from an email message | Y | | |
| Email From | From field extracted from an email message | Y | | |
| Email To | To field extracted from an email message | Y | | |
| Email CC | CC field extracted from an email message | Y | | |
| Email BCC | BCC field extracted from an email message | Y | | |
| Email Sent Date | Sent date of an email message | Y | | |
| DateLastMod | Date that a file was last modified | Y | Y | |
| SHA-1 or MD5 Hash | SHA-1 or MD5 Hash value for the document | Y | Y | |
| Native Link | Path to native file as produced | Y | Y | |
| Text Link | Path to the full extracted text of the document | Y | Y | Y |