IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00515-KDB-DSC

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC, <br><br> **Plaintiff,** <br><br> v. <br><br> NTE CAROINAS II, LLC; NTE CAROLINAS II HOLDINGS, LLC; NTE ENERGY, LLC; NTE SOUTHEAST ELECTRIC COMPANY, LLC; NTE ENERGY SERVICES COMPANY LLC AND CASTILLO INVESTMENT HOLDINGS II, LLC, <br><br> **Defendants.** | **ORDER** |

On October 20, 2021, Plaintiff Duke Energy Carolinas, LLC ("Duke") requested a hearing before Magistrate Judge Cayer for the purpose of seeking a protective order preventing Defendants (collectively, "NTE") from taking the depositions of Ann Warren, one of Duke's in-house counsel, and Lynn Good, Duke's CEO. The parties submitted one-page position statements in advance of a telephone conference with Judge Cayer. (Doc. Nos. 93-13, 93-14). Before that conference was held, Judge Cayer found that a call was unnecessary and entered a Minute Order on October 28, 2021 granting, without further explanation, a protective order as to Ms. Warren and denying it as to Ms. Good. Each party has objected to the part of Judge Cayer's Order favoring the other side. (Doc. Nos. 93, 95). The Court has carefully considered the parties' objections along with their briefs and exhibits and oral argument on the disputes from the parties' counsel on December 7,

1

2021. For the reasons discussed below, the Court will allow a limited deposition of Ms. Warren and affirm the Order allowing Ms. Good's deposition to proceed.

Because Judge Cayer's ruling is not a dispositive order, under Federal Rule of Civil Procedure 72, a district court judge may modify or set aside the order only if it is "clearly erroneous" or "is . . . contrary to law." Fed. R. Civ. P. 72(a). "An order is 'contrary to law' where it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Meineke Car Care Centers, Inc. v. RLB Holdings, LLC*, 2011 WL 13217997, at *1 (W.D.N.C. Sept. 30, 2011) (quotations omitted). Under the clearly erroneous standard, "the reviewing court does not ask whether a finding is the best or only conclusion permissible based on the evidence. Rather, the Court is only required to determine whether the magistrate judge's findings are reasonable and supported by the evidence." *Stone v. Trump*, 356 F. Supp. 3d 505, 511 (D. Md. 2019) (internal quotations and citations omitted). However, in the absence of a ruling from Judge Cayer that explains his reasoning, it is difficult for the Court to know if Judge Cayer's ruling rested on "clearly erroneous" factual determinations or legal analysis which is contrary to law. Also, unlike Judge Cayer, this Court, now has the benefit of oral argument from the parties, which clarified some of the relevant factual contentions. So, the Court has sought here to reach a proper result on the merits, with due regard for its normal "appellate" role in reviewing a Magistrate Judge's non-dispositive discovery rulings.

**Deposition of Ann Warren (In-house counsel)**

On September 29, 2021, NTE issued a notice seeking the deposition of Ann Warren, who is an in-house energy regulatory attorney at Duke. According to NTE, Duke has produced nearly 3,000 non-privileged documents from Ms. Warren's custodial files. NTE contends that Ms. Warren is a critical witness in this matter because she was a key participant in a series of meetings

between NTE and Duke related to the contractual dispute between the parties concerning the suspension of the Reidsville electrical power plant then being constructed by NTE. Also, NTE alleges that Ms. Warren was centrally involved in Duke's decisions to terminate the Reidsville Large Generator Interconnection Contract ("LGIA") without first obtaining FERC's approval and Duke's decision to announce to the public that the Reidsville LGIA had been cancelled. Finally, NTE claims that Ms. Warren was personally involved in earlier decisions to seek FERC's permission before terminating other LGIAs, which it argues is probative evidence of Duke's alleged anticompetitive motives.

Duke has opposed NTE's request to depose Ms. Warren based on its assertion that even though she is a regulatory attorney rather than a litigator she should be considered a "trial counsel" in the case based on her involvement in "developing Duke's litigation strategy" and "Duke's decision-making as it relates to this case." Duke argues that as a counsel in the case, the normal rules allowing broad discovery of persons with knowledge of relevant facts does not apply and NTE should not be allowed to depose Ms. Warren because other individuals (and Duke through a 30(b)(6) deposition) can testify as to the topics which her non-privileged testimony might cover.

Specifically, Duke urges the Court to adopt the test set forth in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir.1986), where the court held that before being permitted to depose opposing counsel a party must show "(1) no other means exist to obtain the information than to depose opposing counsel, ... (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." 805 F.2d at 1327. While *Shelton* has not been adopted by the Fourth Circuit, it has been applied by District Courts in the circuit, including in this Court. *See, e.g., Bell for Rex Venture Grp., LLC v. Kaplan*, No. 3:14CV352, 2017 WL 9802760, at \*1 (W.D.N.C. Sept. 8, 2017). *Shelton,* however, is applicable only where the attorney being

3

deposed is trial or litigation counsel and the subject matter of the deposition concerns litigation strategy. *See Hughes v. Sears, Roebuck and Co*., No. 2:09–CV93, 2011 WL 2671230, at *5 (N.D.W. Va. 7 July 2011) at *5 (citing *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726 (8th Cir.2002); *McAirlaids v. Kimberly-Clark Corp.*, No. 7:13-CV-193, 2014 WL 12782815, at *3 (W.D. Va. Oct. 29, 2014) (applying the *Shelton* test for deposing opposing counsel where in-house counsel was "unquestionably an active member of [the] litigation team" such that the "request to take her deposition invokes the *Shelton* court's concern of protecting against the discovery of trial or litigation strategy").

Considering the totality of the circumstances alleged here, the Court finds that Ms. Warren does not qualify as the type of counsel protected by the *Shelton* rule, at least as it might apply to a blanket prohibition on deposing Ms. Warren. Ms. Warren served as Duke's legal counsel with respect to the Reidsville LGIA and her attorney-client communications, mental impressions and attorney work product in that role are privileged and will be protected from discovery. It also appears that because of her involvement in the handling of the parties' dispute that Ms. Warren has been consulted in connection with the litigation (and those discussions will of course be protected as well). However, Ms. Warren is not counsel of record in the case nor "an active member of the litigation team" such that NTE would inevitably stray into improper questioning concerning litigation strategy. Therefore, the strict *Shelton* test is inapplicable.

Rather, the Court finds that it is appropriate under the general authority of Federal Rule of Civil Procedure 26(c) to enter a protective order permitting a limited deposition of Ms. Warren that balances her roles both as Duke's counsel and as a non-privileged representative and negotiator in the meetings and communications between Duke and NTE. Accordingly, NTE will be permitted to depose Ms. Warren concerning her non-privileged communications and

4

documents, but not her privileged communications, mental impressions and work-product. The Court understands from the Parties' oral arguments that the line between what is privileged and non-privileged may be disputed and even as to privileged matters NTE wants to require Duke to assert the attorney-client privilege to foreclose different testimony later in the case. While the Court cannot and does not rule on the scope of Ms. Warren's privileges in the absence of particular questions, the Court directs all parties to conduct the deposition with due regard for the Court's views that Ms. Warren's internal communications as Duke's counsel on the LGIA and her legal advice and legal analysis are likely to be privileged while her external communications and conduct as a negotiator is not. In any event, counsel are admonished to hold the deposition in the best traditions of professional practice, without belaboring any disputes over what is or is not privileged.[1]

**Deposition of Lynn Good (Duke's CEO)**

Also on September 29, 2021, NTE issued a notice seeking the deposition of Lynn Good, Duke's CEO. Duke seeks to avoid Ms. Good's deposition under the so-called "apex" doctrine, which requires a party to make a heighted showing of necessity prior to deposing a CEO to avoid harassment and misuse of the discovery process. Alternatively, Duke asks the Court to order that Ms. Good's deposition be limited to one hour and to the specific emails that NTE referenced in its one page response before Judge Cayer.

Based on the record before the Court, Judge Cayer's decision to allow Duke's CEO's deposition to proceed is correct (and is certainly not "clearly erroneous"). Under the apex doctrine, "before a party may depose [another party's] high-ranking ('apex') officer, [it] must show that (1)

---

[1] As the Court warned the Parties during oral argument, if counsel repeatedly overstep the permitted scope of the deposition (or doesn't allow the witness to answer appropriate questions) the Court will promptly take corrective action, including the imposition of appropriate sanctions.

the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining [that] information have been exhausted." *Performance Sales & Mktg. LLC v. Lowe's Cos.,* No. 5:07-CV-00140-RLV-DLH, 2012 WL 4061680, at *3 (W.D.N.C. Sep. 14, 2012); *JTH Tax, Inc. v. Aime,* No. 2:16CV279, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016).

However, the Fourth Circuit has not adopted the 'apex' doctrine, *see Kay Co. v. EQT Prod. Co.*, 2018 WL 5118602, at *3 (N.D.W.V. Aug. 27, 2018), and, more importantly, "the apex deposition rule is bottomed on the apex executive lacking any knowledge of the relevant facts. The rule is aimed to prevent the high level official deposition that is sought simply because he is the CEO . . . , not because of any special knowledge of, or involvement in, the matter in dispute." *Paice, LLC v. Hyundai Motor Co.*, 2014 WL 3613394, at *1 (D. Md. June 27, 2014); *see also Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) ("The purpose of the apex doctrine is to protect high- ranking officials from discovery abuses when they have no particular direct knowledge of the facts pertaining to the lawsuit, and thus require protection from litigation tactics used to create undue leverage by harassing the opposition or inflating its discovery costs.") (emphasis and citations omitted). In sum, the apex doctrine, whatever its authority, does not prohibit the deposition of executives who have personal knowledge relevant to the parties' claims and defenses.

NTE argues that Ms. Good has sufficient personal connection to the matters in dispute to be deposed:

> As an initial matter, Ms. Good closely monitored competition from NTE and sought information concerning the competitive threat it posed…. Moreover, NTE's antitrust and unfair trade practices claims rely in large part on Duke's efforts to retain FPWC as a wholesale customer. Ms. Good was not simply aware of those efforts; *she was an active participant in them*. Ms. Good personally met with FPWC's Chairman and CEO, approved the terms of the Duke-FPWC contract, was involved in preparing and in attendance during the presentation to Duke's Board of Directors concerning the FPWC contract, and approved of the final contract.

6

Doc. No. 109 at 9. (emphasis in original). While Duke and Ms. Good may of course dispute these alleged facts, NTE's representations of Ms. Good's relevant knowledge and involvement are sufficient to support a good faith deposition of Ms. Good. Therefore, Judge Cayer's order allowing Ms. Good's deposition to proceed will be upheld.

The Court also declines to grant Duke's alternate request that the deposition be strictly limited as to time or scope. While, again, the Court will (as expressed to the parties) have no tolerance for improper or harassing conduct, Duke has not established any basis to artificially restrict Ms. Good's deposition beyond the usual limits of the governing rules. In particular, it would be wrong to require NTE to ask Ms. Good only about the few emails that it referenced in its one page submission to Judge Cayer. Therefore, the Court will allow Ms. Good's deposition to proceed without additional limitations other than the Court's continued admonishment as to how it expects counsel to conduct themselves (and the consequences if they do not).

### I. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Objection to Judge Cayer's entry of a Protective Order (Doc. No. 93) prohibiting the deposition of Ann Warren is sustained, in part. Defendants may conduct a limited deposition of Ms. Warren as described in this Order; and

2. Plaintiff's Motion for Reconsideration as to Judge Cayer's denial of Plaintiff's request for a Protective Order prohibiting the deposition of Lynn Good (Doc. No. 95) is denied. Defendants may take Ms. Good's deposition as described in this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: December 8, 2021

Kenneth D. Bell
United States District Judge