**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00515-KDB-DSC**

| | |
|---|---|
| **DUKE ENERGY CAROLINAS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **ORDER** |
| **NTE CAROINAS II, LLC, ET AL.,** | |
| **Defendants.** | |

This is an action between two competitors in the market for selling wholesale electrical power, Plaintiff Duke Energy Carolinas, LLC ("Duke") and the defendant NTE Energy companies.[1] Duke asserts claims for breach of contract related to a power generation agreement for a new NTE power plant near Fayetteville, North Carolina, and Defendants have filed counterclaims alleging that Duke violated antitrust and unfair competition laws by anti-competitive conduct towards NTE. Now before the Court is Duke's motion, Doc. No. 177, arguing that NTE should be precluded from claiming more than $2.7 billion dollars in potential counterclaim damages on the grounds they were not timely disclosed. More specifically, Duke claims that NTE did not identify the particular damages – and then still without a specific amount for many of the items – until approximately a week before the end of the discovery period.

---

[1] Defendants, which will be referred to collectively as "NTE," are NTE Carolinas II, LLC, NTE Carolinas II Holdings, LLC, NTE Energy, LLC, NTE Southeast Electric Company, LLC, NTE Energy Services Company, LLC, and Castillo Investment Holdings II, LLC.

1

After careful consideration of Duke's motion, the parties' briefs and exhibits[2] and oral argument on the motion from the parties' counsel, the Court finds that the disclosure of these alleged damages was untimely under Fed. R. Civ. P. 26 and will exercise its discretion to exclude most of these damages claims from evidence at any future hearing or trial pursuant to Fed. R. Civ. P. 37(c)(1). Rule 1 of the Federal Rules of Civil Procedure requires that the rules governing the adjudication of civil actions in Federal district courts "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Most simply put, it would be neither just nor lead to the speedy conclusion of this action to permit Defendants to wait until so late in these proceedings to disclose such an enormous amount of new damages, nearly all of which relates to electric generation projects which were not even identified in Defendants' three times amended counterclaims.

---

[2] Through consent motions that were granted by text orders, the parties have filed a significant portion of their briefs and exhibits under seal. *See* Doc. Nos. 173, 183. Upon the Court's *sua sponte* reconsideration, it appears that much of the information sought to be sealed does not overcome the common law presumption of access to judicial records and documents. In particular, the nature and amount of the future damages merely claimed by NTE is not confidential and proprietary business information sufficient to outweigh the interest in access. *See Rushford v. The New Yorker Magazine, Inc.,* 846 F.2d 249, 253 (4th Cir.1988); *Stone v. Univ. of Maryland Med. Sys. Corp*., 855 F.2d 178, 180 (4th Cir. 1988). Further, to adequately discuss the pending motion and explain the Court's reasoning, the Court must necessarily reveal the nature and amount of the damages that Duke seeks to preclude. *See Jones v. Lowe's Cos.*, 402 F. Supp. 3d 266 (W.D.N.C. 2019) (citing *McKesson Corp. v. Longistics Transportation, Inc.*, No. 5:09-CV-250-F, 2010 WL 11564989, at *12 (E.D.N.C. Nov. 4, 2010)) (allowing records to remain sealed when they were not relied on by the Court in reaching its decision). Accordingly, the Court will unseal any sealed exhibit on which the Court relies in this Order. Finally, as to the potential sealing of dispositive motions and related memoranda and exhibits, the Court notes that a higher standard set by the First Amendment will apply, allowing access to be "denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180. In sum, the Court intends to consider and try this case publicly to the full extent required, even if the parties would prefer to have their case adjudicated more privately.

2

# I.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(a)(1) requires all parties to provide certain initial disclosures regarding witnesses, documents and other information early in the proceedings. Fed. R. Civ. P. 26(a)(1). The advisory committee notes on the 1993 amendment of the rules that added these requirements referred to these mandated disclosures as "the functional equivalent of court-ordered interrogatories," requiring "without need for any request, [the disclosure of] four types of information that have been customarily secured early in litigation through formal discovery." Fed. R. Civ. P. 26 Advisory Committee's Note to 1993 Amendment. Further, "a party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Fed. R. Civ. P. 26 (a)(1)(E).

Most relevant here, a party must provide "a computation of each category of damages claimed" and must "make available for inspection and copying ... the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Moreover, following this initial disclosure, the disclosing party has a continuing duty to supplement and correct its damages computation "in a timely manner," including to update the materials on which the party relies in assessing its damages. *See* Fed. R. Civ. P. 26(e).

The purpose of Rule 26(a) is to allow litigants "to adequately prepare their cases for trial and to avoid unfair surprise." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014)). Accordingly, a party who fails to comply with the disclosure rules is prohibited from "us[ing] that

3

information or witness to supply evidence ... at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This sanction is, in the words of the notes of the advisory committee, "automatic" and "self-executing." *See* Fed. R. Civ. P. 37 Advisory Committee's Note to 1993 Amendment.

Still, district courts are accorded "broad discretion" in determining whether a party's nondisclosure or untimely disclosure of evidence is substantially justified or harmless. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003)). In making this determination, district courts are guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *See Bresler,* 855 F.3d at 190 (citing *Southern States*, 318 F.3d at 597). The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception. *Id.* The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless. *Id*.

## II.    FACTS AND PROCEDURAL HISTORY

This matter is a business dispute involving Duke's claims that NTE breached a 2017 Large Generator Interconnection Agreement related to a new power plant that NTE planned to build in Reidsville, North Carolina (the "LGIA") and Defendants' counterclaims alleging that Duke violated the federal antitrust laws and state law in connection with the competition between Duke and NTE for wholesale power sales (*i.e.*, sales of electricity to wholesale customers, such

4

as municipalities that operate their own local electric utilities). *See generally*, Doc. Nos. 114, 125. In addition to the Reidsville plant, NTE affiliates that are not parties to this action are in the process of developing other energy facilities in the Carolinas and Connecticut including: the Killingly Energy Center in Connecticut; the Anderson Energy Center in South Carolina; and the Gastonia Energy Center and Fayetteville Solar Energy Center in North Carolina (collectively, the "Other NTE Facilities"). Although NTE's counterclaims complain generally that their businesses were harmed by Duke's alleged wrongful conduct beyond Reidsville, none of NTE's counterclaims mention any of the Other NTE Facilities by name.

Plaintiff filed this action in North Carolina state court against NTE on September 6, 2019. NTE removed the action to this Court on October 8, 2019 on the grounds of federal question jurisdiction. On December 11, 2019, NTE first answered the complaint, which was amended in December 2021, and asserted their counterclaims against Duke. NTE's Counterclaims have been amended three times, with Defendants' final Third Amended Counterclaims being filed on January 7, 2022. *See* Doc. Nos. 11, 18, 86, 114 and 125.

### A. NTE's Initial Damages Disclosures

On October 20, 2020, NTE served its initial disclosures under Rule 26. With respect to damages, NTE stated:

> … NTE is presently unable to provide a complete estimate of its damages. Not only will such an estimate require discovery from Duke, as well as third parties, but it will also require both expert analysis, as well as the passage of time, to assess the financial impact of Duke's conduct.
>
> At the present time, NTE believes its damages, before trebling, are in the hundreds of millions of dollars. These damages may include costs incurred developing the Reidsville facility, additional costs incurred during time lost due to Duke's unlawful "termination" of the Reidsville LGIA, lost business and profits, lost future profits, lost revenues from contracts cancelled as a result of Duke's unlawful actions, additional financing costs, as well as treble damages, reasonable attorneys' fees and court costs as allowed by law.

5

Doc. No. 178-2.

When NTE added new NTE affiliates NTE Southeast Electric Company, NTE Carolinas II Holdings LLC, NTE Energy Services Company, LLC, and Castillo Investment Holdings, II, LLC, as counterclaim plaintiffs on October 22, 2021 and January 7, 2022, respectively, it did not provide additional disclosures on behalf of those entities.

### B. The Parties' Discovery

Following initial disclosures, the parties engaged in extensive fact discovery. On November 24, 2020, Duke sent NTE a request for production, requesting, among other things:

> 120. All Documents [NTE] allege[s] tend to show any damages suffered by NTE that it seeks to obtain in this Lawsuit.

On January 11, 2021, NTE responded to Duke's RFP No. 120 by stating:

> Defendants incorporate all of the foregoing General Objections … . Subject to these objections, Defendants further respond as follows: Defendants intend to present expert testimony as to their damages and will comply with the requirements of Rule 26 in a timely fashion.

Doc. No. 178-3. In total, the parties served over 200 requests for the production of documents, which resulted in the exchange of over 120,000 documents. The parties also reviewed thousands more documents produced by third parties and answered dozens of interrogatories.[3] With respect to testimony, the parties deposed over 40 individuals and exchanged 17 initial and rebuttal expert reports.

---

[3] Duke has not provided to the Court evidence of any interrogatory directly related to damages. However, as noted above, the disclosures required under Rule 26 serve in effect as court ordered interrogatories and Duke could reasonably have believed based on NTE's response to its request for production of damages documents that a separate damages interrogatory was unnecessary because NTE represented that it would be producing its damages contentions through expert testimony.

Case 3:19-cv-00515-KDB-DSC   Document 187   Filed 03/24/22   Page 6 of 21

NTE contends that this discovery revealed to Duke substantial information and documents related to its claims of Duke's improper conduct at the Other NTE Facilities. Specifically, NTE points out that the parties negotiated search terms requiring both parties to search for documents beyond the Reidsville plant. Accordingly, NTE and Duke produced documents related to the Anderson, Gastonia, and Fayetteville Solar plants, including materials relating to NTE's allegations that Duke improperly delayed providing "interconnection studies" for the plants. Also, NTE claims that it produced documents that "bear directly on the calculation of damages," including contracts which it relies on to support approximately $7.4 million in additional costs it allegedly incurred because of Duke's interference with the development of the Reidsville project and damages related to the Killingly plant. Further, NTE claims that it disclosed its belief that Duke was improperly coordinating with Mitsubishi (an allegation related to its Killingly and Reidsville claims) in its interrogatory responses and in deposition testimony. *See* Doc. No. 182-21 at Resp. to Interrog. 5; Doc. No. 184-22 40 at 96:9–99:9. Finally, NTE argues that NTE witnesses testified about the harm Duke has caused at both the Reidsville plant and the Other NTE Facilities. *See* Doc. No. 184-22 at 42:7–9, 42:22–43:3, 44:4–8.; Doc. No. 184-2 at 47:19–48:22.; Doc. No. 184-57 at 38:20–39:4, 46:22–48:21, 49:4–10, 62:5–82:13, 107:20–108:21, 198:13–18, 198:20–22. However, NTE admits that it did not produce during this fact discovery any calculation of damages related to the Reidsville plant or the Other NTE Facilities.

### C. NTE's Disclosure of Damages Related to the Other NTE Facilities

The parties exchanged initial expert reports on January 14, 2022. NTE's expert, Robert Mudge, estimated that NTE's damages totaled $194 million, consisting of $94 million in alleged lost equity value of the Reidsville plant development assets and $100 million in alleged lost costs, fees, and profits from the Reidsville project. On February 7, 2022, three weeks after the expert

7

report deadline, NTE served an amended expert report from Mr. Mudge in which he opined that NTE's damages total $201 million, with the damages again confined to the Reidsville project.

On February 8, 2022, six days before the February 14, 2022 close of discovery, Stephanie Clarkson, NTE's CEO, testified as NTE's Rule 30(b)(6) representative. In response to questions related to Duke's request that NTE be prepared to testify about its damages, Ms. Clarkson testified that, in addition to the damages described in Mr. Mudge's expert report, NTE claims that it has suffered more than $900 million in damages for which it seeks over $2.7 billion in trebled damages. *See* Doc. No. 178-4 at 21:13-39:13. These additional damages included 1) approximately $7.8 million in "Additional Reidsville Development Cost," 2) $600,000 in attorneys' fees to defend a FERC Proceeding related to the Reidsville plant, 3) over $52 million related to "MPHA" (which refers to actions of NTE's lender Mitsubishi regarding the Killingly plant)[4] and 4) lost profits at the Anderson, Gastonia and Fayetteville Solar plants. Each of these damages was listed on a one page summary of "Other Damages" that Ms. Clarkson had prepared in advance (and which was given to Duke the day before the deposition). *See* Doc. Nos. 176-5, 182-11.

With respect to damages related to the Anderson, Gastonia and Fayetteville Solar plants, Ms. Clarkson's notes listed the amount of those damages as "TBD;" however, during the deposition she testified that in total the damages related to those facilities would "probably" be more than $900 million. *See* Doc. No. 176-4 at 38:16–18, 39:4-5. Ms. Clarkson testified that her damages testimony was based, at least in part, on information in NTE's accounting system, which NTE had not produced in response to Duke's RFP on damages (discussed above). Also, prior to the 30(b)(6) deposition, NTE had specifically objected to testifying about the Killingly plant

---

[4] Mitsubishi is not a party to this action and it appears to be undisputed that Duke has had no involvement in the Killingly plant.

because "events that took place after the filing of NTE's counterclaims," have "no bearing on any of the claims and defenses in this case." *See* Doc. No. 178-6.

Following the 30(b)(6) deposition, Duke told NTE that it intended to pursue a motion to exclude the additional damages disclosed at the 30(b)(6) deposition. After unsuccessful attempts to resolve the dispute, on February 23, 2022 (nine days after fact discovery ended), NTE's counsel sent Duke a letter as a "supplemental disclosure concerning NTE's damages." The letter provided a more specific narrative summary of the "other damages" Ms. Clarkson had identified in the 30(b)(6) deposition, along with a number of documents related to the damages. *See* Doc. No. 176-7. This letter from NTE's counsel included an "estimate"[5] of NTE's "lost profit" damages for Anderson, Gastonia and Fayetteville Solar of $677,052,631, $158,684,210 and $12,694,737 respectively based on an amount for "damages-per-MW capacity" taken from Mr. Mudge's expert report. Other than Ms. Clarkson's 30(b)(6) deposition testimony, this letter was the only written computation that NTE disclosed to Duke relating to NTE's damages beyond those that were the subject of Mr. Mudge's expert report (which, again, only opined on damages for Reidsville).[6]

**D.    Duke's Motion to Preclude Evidence**

On March 3, 2022, Duke filed a motion pursuant to Rules 26 and 37 to preclude NTE from relying on evidence of damages calculations outside the scope of NTE's expert report, including all of the damages disclosed in the February 23, 2022 "supplemental disclosure," or, alternatively,

---

[5] Despite including these "estimated" calculations for damages related to Anderson, Gastonia and Fayetteville Solar, the letter continued to refer to these damages as "TBD" because "the jury has not yet determined what NTE's damages-per-MW for Reidsville are."
[6] While reserving the possibility of asserting an objection to Mr. Mudge's report on other grounds, Duke does not challenge NTE's right to claim the damages described in that report based on inadequate or untimely disclosure.

provide Duke an opportunity for additional discovery, further expert filings and extensions of the dispositive motions deadline and the trial date. NTE opposes all the relief requested by Duke.

## III. DISCUSSION

### A. NTE's Duty to Supplement its Damages Disclosures

As often occurs in even the most contested motions, the Parties generally agree on the governing legal tests, but disagree on the application of those rules to the relevant facts. Here, the parties acknowledge that NTE was required under Rule 26(a) to serve a computation of damages on Duke, and that if the computation was incomplete, it was required under Rule 26(e) to supplement its damages computation in a timely manner. So, the threshold question before the Court is whether NTE timely disclosed its damages calculation under Rule 26. The Court finds that it did not.

NTE's initial damages disclosure specifically stated that "NTE is presently unable to provide a complete estimate of its damages" before going on to say that "NTE believes its damages, before trebling, are in the hundreds of millions of dollars." Even putting aside NTE's explicit statement that its disclosure was incomplete because of several factors, including the need for discovery, expert analysis and "the passage of time," a Rule 26(a)(1)(A)(iii) disclosure must include "more than a lump sum statement of the damages allegedly sustained." *See Silicon Knights, Inc. v. Epic Games, Inc.*, No. 5:07-CV-275-D, 2012 WL 1596722, at *4 (E.D.N.C. May 7, 2012) (quoting *City & Cnty. of S.F. v. Tutor–Saliba Corp.,* 218 F.R.D. 219, 221(N.D. Cal. 2003). Instead, the rule "contemplates some analysis," including an analysis of the damages sought as to each claim. *Id.* Merely stating an admittedly speculative belief in advance of discovery that damages are "in the hundreds of millions of dollars" plainly fails to satisfy Rule 26(a). Therefore, NTE's initial damages disclosure required supplementation under Rule 26(e).

10

With respect to supplementation, NTE argues in its response[7] that no formal supplementation of its damages disclosure was required because "the additional or corrective information has [] otherwise been made known to the other parties during the discovery process or in writing." *See* Fed. R. Civ. P. 26(e)(1)(A). NTE is correct that if the full substance of a required Rule 26(a) disclosure has been provided during discovery (for example, through an interrogatory response, document production or unequivocal sworn testimony), then the rules do not require the formality of duplicative supplementation under Rule 26(e). However, there is no evidence that NTE provided any calculation of damages related to the Other NTE Facilities prior to February 2022.

Therefore, even if the Court accepts NTE's debatable contention that discovery clearly revealed NTE's intent to seek lost profit and other damages for the Other NTE Facilities[8] (despite the fact that Mitsubishi, Killingly, Anderson, Gastonia and Fayetteville Solar were not named in NTE's counterclaims[9] and no mention was made of such damages in NTE's damages expert's report), NTE's failure to *quantify* those damages claims during discovery dooms its argument that

---

[7] Much of NTE's response details its arguments on the merits of its counterclaims against Duke. By its ruling on this motion, the Court does not reach nor express any view on the merits of either side's substantive legal claims, which are not now before the Court.

[8] Duke claims that it had legitimate reasons that are unrelated to NTE's purported damages to ask in discovery about the Other NTE Facilities. For example, in its Complaint, Duke alleges that "[NTE] comingled financing for multiple projects and diverted funds from the Reidsville Energy Center to the Killingly Energy Center." *See* Doc. No. 114 at ¶ 212. Duke also contends that the Other NTE Facilities are relevant to Duke's defenses regarding whether NTE was excluded from the relevant market.

[9] NTE argues that even though it did not name these other power plants (or the NTE affiliates who own them) in the counterclaims, those pleadings did refer to harm related to "future NTE Energy facilities," "related companies" and "other projects." *See, e.g.*, Doc. No. 18 at ¶¶ 66, 69, 81. However, as Duke points out, this argument cuts both ways. That is, if these general allegations – which were filed ten months before NTE's initial damages disclosure was served – were sufficient to put Duke on notice of NTE's damages claims related to the Other NTE Facilities then NTE could have specified them in its disclosures.

supplementation of its initial disclosure was unnecessary. *See Bastidas v. Good Samaritan Hospital, LP*, No. 3:13-CV-04388-SI, 2017 WL 1345604, at *2 (N.D. Cal. Apr. 12, 2017) (precluding a plaintiff from relying on a supplemental damages calculation when the plaintiff sent defendants the figures used to make the calculations at "the last minute" and noting that "the figures alone do not explain the assumptions required" to understand them); *see also Silicon Knights*, 2012 WL 1596722, at *4–5 (disclosing damages-related documents alone, without disclosing a computation based on such documents, does not satisfy a party's Rule 26(a)(1)(A)(iii) obligation); *Agence France Presse v. Morel*, 293 F.R.D. 682, 684 (S.D.N.Y. 2013) ("[E]ven a party's own production of documents supporting its theory of damages cannot excuse that party from its separate obligation to disclose a damages computation.")

Alternatively, NTE argues that any lack of information that Duke may have about NTE's claimed damages is "a problem of Duke's own making." Doc. No. 184 at 20. NTE asserts that a well-represented, large company such as Duke could have asked NTE's witnesses more questions about its allegations of harm relating to other projects, served a specific damages interrogatory, insisted on different search terms, etc. The Court declines to accept NTE's attempt to "blame the victim" for its own failure to follow the rules.

NTE had an independent, affirmative obligation to supplement its damages disclosures, and the rules clearly suggest that a party may not shirk its disclosure obligations based on the conduct of another party. *See* Fed. R. Civ. P. 26(a)(1)(E) ("A party is not excused from making its disclosures … because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures."); *Silicon Knights,* 2012 WL 1596722, at *5 (party's ability to depose witnesses who had some knowledge of damages did not satisfy Rule 26(a)(1)(A)(iii). Further, in light of NTE's representation that it intended to present its damages

12

through expert testimony (as well as NTE's ongoing disclosure obligations), Duke could reasonably have concluded that it would be most efficient – particularly with NTE's lack of specificity in its pleadings – to simply wait for NTE to serve its damages expert's report to pursue additional discovery related to damages. Therefore, NTE – not Duke – bears full responsibility for satisfying NTE's obligation to supplement its incomplete initial damages disclosure.

### B. The Timeliness of NTE's Supplementation of its Damages Disclosures

Having concluded that NTE was required to supplement its damages disclosure, the question becomes whether it did so "in a timely manner." Fed. R. Civ. P. 26(e). With respect to most of its damages related to the Reidsville plant at the core of this dispute, NTE supplemented its damages disclosure on January 14, 2022 through its damages expert's report that described approximately $200 million in alleged damages (with a relatively minor amendment on February 7, 2022). As noted, Duke does not challenge the sufficiency or timing of this supplementation under Rule 26. With respect to supplementation of its damages disclosure for the Other NTE Facilities, NTE supplemented its disclosure with Ms. Clarkson's testimony at NTE's 30(b)(6) deposition on February 8, 2022 and more specifically in NTE's counsel's letter describing those damages on February 23, 2022. While Duke fairly challenges the sufficiency of these supplementations as still too indefinite, especially as to the damages which NTE says are "TBD," the primary issue in this part of the analysis is whether the supplementation was untimely.

NTE's first supplementation through Ms. Clarkson at the 30(b)(6) deposition came six days before the end of the discovery period and its more detailed supplementation (the only time an actual damages calculation was provided for each category of damages) was served nine days after the close of discovery. The Court readily finds that a supplementation of the disclosure of nearly

13

a billion dollars of additional damages[10] (more than four times the amount of its claimed damages related to Reidsville) very shortly before or, more accurately here, after the close of discovery is untimely under Rule 26. With such a belated disclosure, Duke was given no meaningful opportunity to conduct discovery on NTE's additional damages. Therefore, under any reasonable interpretation and application of Rule 26(a) and (e), NTE's disclosure of its damages computation as to its "other damages" came too late. *See Loc. Access, LLC v. Peerless Network, Inc*., No. 614CV399ORL40TBS, 2017 WL 784828, at *3–4 (M.D. Fla. Mar. 1, 2017) (supplemental disclosure ten days before the end of discovery untimely); *Silicon Knights,* 2012 WL 1596722, at *10 (discovery had ended when the party's Rule 26(a)(1)(A)(iii) disclosure became inadequate).

### C. The Appropriate Sanction for NTE's Untimely Supplementation under Rule 37(c)(1)

As noted above, if a court finds that a party's Rule 26(a) disclosures are untimely, then that evidence must "automatically" be excluded unless the party who made the belated disclosures establishes that the delay was "substantially justified" or "harmless." *See* Fed. R. Civ. P. 37(c)(1). The five factors which may be considered[11] in making this determination are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance

---

[10] While the amount of damages disclosed may not always be relevant to the timing of a supplementation, in these circumstances the massive amount of additional damages claimed by NTE strengthens the Court's conclusion that the supplementation was untimely. In relative terms, the greater the amount and percentage of the damages being disclosed, the sooner a party should disclose the information during discovery.

[11] District courts are not required, however, to expressly consider each factor in deciding whether a nondisclosure or untimely disclosure was substantially justified or harmless. *See Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011).

of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *See Bresler,* 855 F.3d at 190 (citing *Southern States*, 318 F.3d at 597).

Applying these factors, the Court finds that NTE's untimely disclosure of its "other damages" was neither "harmless" nor "substantially justified" as to its alleged damages from the Killingly, Anderson, Gastonia and Fayetteville Solar plants. NTE cannot show that its failure was harmless because Duke has been deprived of the opportunity to conduct discovery to investigate and evaluate NTE's new computation of damages. This discovery reasonably includes all the facts that underlie NTE's claims that Duke (as distinguished from other reasons) caused damage to NTE at the Other NTE Facilities. Thus, Duke has at this point been materially prejudiced in its ability to defend NTE's counterclaims. Similarly, NTE has not established that its delay was substantially justified. In fact, as discussed below, NTE has in effect acknowledged that it cannot offer the Court a reason to excuse the timing of its disclosure.

First, Duke was clearly surprised by NTE's belated disclosure through a lay witness that NTE was seeking over $900 million (before trebling) in damages related to the Other NTE Facilities. Based on NTE's earlier representations, Duke reasonably believed that NTE intended to present its damages evidence through expert testimony. Also, NTE's counterclaims did not even name the Killingly, Anderson, Gastonia and Fayetteville Solar power plants, for which NTE now claims damages that exceed four times the amount of NTE's "core" damages related to the Reidsville plant. Therefore, the Court can only conclude that Duke was surprised by NTE's disclosure of damages related to the Other NTE Facilities.

Second, while Duke's surprise could presumably be "cured" through further fact and expert discovery, amendment of the pleadings and related motion practice, those additional proceedings would carry a significant cost and create a long delay in the resolution of the parties' claims.

Indeed, it would almost always be true that with enough time and money a party could cure the effects of an untimely disclosure. Thus, this factor is best understood as requiring the Court to weigh the magnitude of the effort that would be required to allow the new evidence to be fairly included as part of the case. Here, given the broad scope of the additional disclosures, which are related to four different power plants, and the enormous amount of the claimed damages, the effort that would be required to allow Duke to be in a comparable position to where it would have been if the claimed damages had been timely disclosed would be extensive.[12]

The third factor – the extent to which allowing the evidence would disrupt the trial – similarly favors a finding that the untimely disclosure was not harmless. Allowing NTE to present damages claims related to the Other NTE Facilities would create several additional "trials within trials" on the facts concerning those other power plants, which would disrupt and significantly lengthen the trial.[13] Also, allowing the evidence at trial (along with all the discovery, etc. which

---

[12] At oral argument, Duke's counsel argued that it would need to pursue discovery as to each of the four Other NTE Facilities as if it was a separate case, exploring in depth the reasons why each NTE plant had been unsuccessful. Also, despite NTE's contention that damages amounts for these other plants could easily be bootstrapped on to NTE's existing damages methodology, NTE's counsel disclaimed any need for a modified expert report, saying those damages would simply be established through Ms. Clarkson's lay testimony. In response, Duke argued that the expert's methodology for calculating damages at the Reidsville plant could not simply be applied to other plants, requiring additional discovery and likely motions challenging any use of Mr. Mudge's report for other plants.

[13] At oral argument, NTE's counsel suggested that if damages related to the Other NTE Facilities were excluded under the rules then NTE would simply file several new lawsuits asserting the damages at the other facilities. While the propriety of additional complaints is of course not currently before the Court, the Court discounts the risk of multiplying litigation under these circumstances. Imposition of the sanction of preclusion (which is specifically provided in the rules) for the untimely disclosure of information, including damages, does not affect whether the *claims* which NTE might allege in a new lawsuit have already been brought in this action or arise out of the conduct that NTE has alleged in this action to be unlawful. Indeed, if a party was simply permitted to file a new lawsuit to include information precluded under Rule 37, the sanction would not only be meaningless, it would be harmful to the litigation process.

would have to be done) would necessitate a substantial delay in the start of the trial, probably until sometime in 2023 (perhaps even later if additional parties, including an unrelated party such as Mitsubishi, are brought into the case). This case will already be almost three years old at the time of trial. Indeed, NTE urges the Court not to delay a resolution of the parties' claims because of the alleged effects of the uncertainty surrounding these issues on its business. The Court agrees that it is time for this matter to be decided on the merits, which will benefit everyone concerned.

Finally, the Court finds that the "importance" of the evidence weighs against a finding that allowing the evidence to be presented would be harmless. The damages evidence sought to be precluded is clearly important to Duke because of its amount, which, even though Duke is a large company, would exceed all or a substantial percentage of its yearly net income if trebled.[14] On the other hand, although NTE claims that the evidence is important to its counterclaims, NTE's conduct in handling its allegation of damages at the Other NTE Facilities belies this claim of importance. Simply put, it is not credible for NTE to argue that "important" evidence of nearly a billion dollars in pre-trebled damages at four specific power plants would 1) not be included in any of NTE's three versions of its counterclaims (the latest in January 2022), 2) not be included in any expert report and 3) be disclosed and calculated in such an offhand and belated way at the very end / after the close of discovery. Even more directly, NTE specifically objected on February 2, 2022 to Duke's 30(b)(6) deposition notice topics regarding Killingly and other plants, stating that "information about the Killingly Energy Project [and] unnamed affiliates of NTE … has no bearing

_____

[14] According to Duke Energy Corporation's (Plaintiff's parent company) most recent publicly filed Form 10-K annual report, the net income for the company was $1.27 billion in 2020 and $3.771 billion in 2021. *See* Duke Energy Corporation, Form 10-K 2021(February 24, 2022); https://www.duke-energy.com/our-company/investors/financials.

on any of the claims or defenses in this case."[15]  In other words, if NTE truly believed evidence of this magnitude was important it would have treated the damages claims related to the Other NTE Facilities much differently.

Finally, the Court must consider NTE's explanation for its failure to timely disclose this evidence to assess whether NTE's belated disclosure was substantially justified. Whether a failure to disclose was substantially justified turns in large part on the party's explanation for the nondisclosure, including its ability to timely disclose and the legal basis for believing disclosure was not required. *See Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190. However, in both its brief in opposition to the motion and during oral argument, NTE failed to give any reason to explain why it had not disclosed these damages earlier, other than to reprise its argument that it believed that Duke had sufficient notice of NTE's damages. The Court has already rejected this "notice" defense, which in any event cannot serve as an independent "justification" for NTE's delayed disclosure. Indeed, during oral argument, NTE's counsel in effect acknowledged that NTE could not give the Court a justification for the timing of its damages disclosures, saying in response to the Court's direct question as to whether NTE was claiming a justification only that he wanted to move on and "discuss the proper remedy." Therefore, NTE has not shown a substantial justification for its untimely damages disclosures.

In sum, considering and weighing all the relevant factors, the Court finds that NTE has failed to carry its burden to prove that its disclosure of a damages calculation for the Other NTE

---

[15] At oral argument, NTE's counsel admitted that he "wished [the objections] had been done differently" and asked the Court to simply ignore these objections because NTE did not object to questions on these topics at the deposition. However, as noted by Duke's counsel, objections should always be made in good faith so the Court will take into account NTE's plainly inconsistent objections which, at a minimum, undermine any finding that damages related to Killingly and the other plants is critically important to NTE.

Facilities for the first time in February 2022 was either substantially justified or harmless.[16] Therefore, in accordance with Rule 37(c)(1), the Court will grant Duke's motion to preclude that evidence and not allow NTE to use the damages evidence related to the Other NTE Facilities at any future hearings or trial in this matter.

However, as to the other alleged damages identified during NTE's 30(b)(6) deposition – "Additional Reidsville Development Cost" of approximately $7.8 million and attorneys' fees of $600,000 related to a FERC proceeding involving the Reidsville plant – the Court reaches a different conclusion under Rule 37. Although the disclosure of the computation of these damages was similarly untimely and NTE provides no justification for waiting to disclose them, the Court finds in the exercise of its discretion that the delay was harmless and can be reasonably remedied without precluding the damages. Applying the *Southern States* factors, Duke admitted at oral argument that while it was unaware of the computation of these specific damages until the 30(b)(6) deposition, it was not surprised by NTE claiming damages related to the Reidsville plant. Further, unlike the damages related to the Other NTE Facilities, NTE listed "costs incurred developing the Reidsville facility" as an item of damage in its initial damages disclosure. So, the first factor of "surprise" favors a finding of harmlessness.

Second, Duke also admitted that it could "cure" any surprise with a short period of additional discovery on these alleged damages, which would not disrupt the trial or any other

---

[16] The Parties have each cited to the Court numerous cases which they contend support their positions and argued that the other side's cases are readily distinguishable from the facts here. While the Court has carefully considered these cited authorities, it agrees with both sides that all the cited cases are distinguishable; that is, the application of Rule 37 in this context is highly fact specific, with the result in each case depending on the court's exercise of discretion in light of the factors applied to the particular circumstances. *See Silicon Knights*, 2012 WL 1596722, at *10 (noting that the differing outcome of cited cases merely reflects the principle that the outcome of *Southern States's* prescribed balancing test is fact-specific).

portion of the current schedule. Finally, while these damages are relatively small in amount compared with NTE's other Reidsville damages, it is fair to say that it is important to NTE to recover all its proven damages in connection with the Reidsville plant. Therefore, the Court concludes that with respect to these two items of additional damages NTE has shown that its late disclosure was "harmless" under Rule 37, and the Court will deny Duke's motion to preclude that damages evidence. Instead, the Court will extend discovery for a short period of time to give Duke an opportunity to pursue discovery limited to these issues. Except for this additional period of limited discovery, the case management schedule for this action shall remain unchanged.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion to Preclude Evidence (Doc. No. 177) is **GRANTED in part and DENIED in part** as described above**;**

2. Defendants are prohibited from using the alleged damages related to the Killingly, Anderson, Gastonia and Fayetteville Solar power plants that they identified in their February 2022 "supplemental" damages disclosures at any hearing or trial in this matter;

3. The discovery period is extended until April 30, 2022 for the limited purpose of allowing Plaintiff to pursue reasonable discovery related to NTE's additional damages that have not been precluded;

4. Except for the partially extended discovery period ordered above, the case management schedule in this action is not changed, including the deadlines for dispositive motions and trial;

5. The clerk is directed to unseal Doc. Nos. 176-4, 176-5 and 176-7; and

20

6. This case shall proceed to a resolution on the merits of each side's claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 24, 2022

Kenneth D. Bell
United States District Judge