IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00515-KDB-DSC

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NTE CAROINAS II, LLC, ET AL.,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on its own motion[1] to address the issues raised in Plaintiff Duke Energy Carolinas, LLC (Duke) counsel's letter to the Court dated April 6, 2022 (Doc. No. 197) (the "Letter") concerning the form and length of Duke's memorandum of law in support of its motion for summary judgment (Doc. No. 194) (the "Memorandum"). Often when Parties to civil actions bring to this Court complaints about the formatting of submitted documents, including the minutia of line spacing, prevalence of footnotes, etc., the Court is simply disappointed in both Parties' elevation of form over substance. While part, or even all, of this dispute could have been handled without the involvement of the Court by cooperative counsel,[2] the issues raised by Duke's conduct with respect to its preparation of the Memorandum cut deeper,

---

[1] Shortly before receiving an email from the Court suggesting that they defer any response to Duke's counsel's letter, Defendants filed a Motion to Strike Duke's memorandum. (Doc. No. 195). The Court has considered Defendants' memorandum in support of that motion, (Doc. No. 196), as a response to the Letter. However, in light of the resolution of the issues raised by the Motion to Strike in this Order, the Court need not reach and will deny as moot Defendants' motion.

[2] This case is plainly of significant importance to counsel's clients on both sides. Respectfully, counsel would be well-advised to put aside their apparent personal acrimony and focus their considerable legal talents on the merits of their respective client's claims and defenses.

1

reflecting in the Court's judgment a deliberate attempt to at least skirt if not evade the page limits set by the Court.

Then, perhaps even more troubling, rather than simply own up to its efforts and invite NTE to do the same, Duke's counsel doubled down on its actions by attempting in the unfiled Letter to recast what it did as normal brief writing, even though its previous briefs had not employed any of the tactics it used to enlarge the contents of the Memorandum.

The Court will not countenance Duke's behavior, which not only reflects poorly on counsel, but undermines the Court's authority to fairly set the parameters of arguments to the Court. Accordingly, as described below, the Court will 1) allow Defendants to use the same line spacing, etc. used by Duke, 2) not consider any exhibit which is not cited in the Memorandum but still purportedly filed in "support" of the Memorandum, 3) allow Defendants four extra days to file their response to the Memorandum and 4) not permit Duke to repeat this conduct in preparing its Reply brief.

## I. DISCUSSION

On October 27, 2021, the Court entered an Amended Pretrial Order and Case Management Plan ("CMO"), Doc. No. 88, which set the page limits, fonts and spacing requirements for all motions and memoranda of law. Under the CMO, primary briefs are limited to twenty-five pages and "all briefs must be double spaced and all text (including footnotes) must be in a proportional font of at least 12-point type." Since the CMO was entered, Duke has filed a number of briefs in accordance with these requirements, using the standard "double spaced" setting available for WORD documents. *See, e.g.*, Doc. Nos. 105, 186. On March 25, 2022, Duke filed a motion seeking to enlarge the page limits to sixty pages for its memorandum in support of its upcoming motion for summary judgment. Doc. No. 188. The Court granted the motion, but only in part,

permitting the Parties to file primary briefs of no more than thirty-five pages and reply briefs of fifteen pages. *See* Text Order dated March 28, 2022.

On April 4, 2022, Duke filed a motion for summary judgment and its supporting thirty-five page Memorandum. Doc. Nos. 191, 194. The Memorandum does not use standard "double spaced" line spacing. Instead, it employs "24 Point" spacing, which must be manually set as a special "Exactly" setting in the document. The Memorandum also contains numerous string citations in footnotes, rather than in the text where Duke had put its citations in earlier briefs. In addition to the Memorandum, Duke filed an "Appendix" and "Appendix 2" totaling 256 exhibits. However, approximately 200 of those exhibits are not cited in the Memorandum.[3]

On April 5, 2022, Defendant's counsel sent Duke's counsel a letter in response to Duke's filing, accusing Duke of "manipulating" the preparation of the Memorandum and filing of supporting exhibits to evade the page limits set by the Court. Defendants threatened to file a motion to strike the brief but indicated a willingness "to hear your explanation first." *See* Doc. No. 197. Rather than respond to these complaints in a letter directly to Defendant's counsel (or await the motion to strike), Duke sent the Court, via email to one of the Court's law clerks, a letter on April 6, 2022 enclosing Defendant's April 5 letter and providing its explanation and arguments in response. Duke did not file its letter, which has since been filed on the docket by the Court. *Id.*

Duke's preparation of the Memorandum, filing of uncited exhibits and unilateral ending of any effort to resolve this dispute through a letter outside the established process (i.e. filing a motion) raises a number of issues. In sum, as discussed below, the Court finds that Duke breached

---

[3] Also, while the exhibits are numbered in the Appendices, the Memorandum does not contain a numerical reference to cited exhibits, requiring the Court to search through the list of 256 exhibits to find any cited exhibit in the record.

3

the letter and, if not, certainly the spirit of the Court's briefing requirements and appropriate remedies must be imposed.

### A.     24 Point Spacing

The first issue before the Court is whether Duke's use of "24 Point" spacing complies with the Court's requirement that briefs be "double spaced." The Court finds that it does not. Word processing programs, including the WORD program used in nearly all submissions to the Court, contain a standard setting for "double" spacing. Indeed, the Court, Duke and Defendants have routinely used that setting in the various orders and submissions filed throughout this case. Thus, a common sense understanding of "double spaced" in the context of word processing along with the practical application of that understanding that has been previously followed by the Parties here and in countless other filings in the Court, quickly leads to the conclusion that "double spaced" refers to the standard "double" setting for spacing in WORD (or another widely accepted word processing program) rather than "24 Point" spacing.

Plaintiff's attempt to excuse its use of "24 Point" spacing based on a technical explanation that "24" is double the required 12 point font size is unpersuasive. While the Court does not quarrel with Plaintiff's math, the simple fact is that Plaintiff had to deliberately change the typical "double" spaced setting in WORD to a special different setting, and the only reason to do so was for Duke to fit more lines on each of its allotted pages after the Court refused its request to file a sixty page brief.[4] *See Al-Ahmed v. Twitter*, 553 F. Supp. 3d 118, 123 n.3 (S.D.N.Y. 2021) (holding argument that counsel "had interpreted the Court's double spacing requirement to allow 24 point spacing"

---

[4] The significant effect of this change in spacing is easily seen in taking any page of text formatted with standard "double" spacing and changing it to 24 Point spacing. The "page" of standard double spaced text becomes three or four lines of text shorter and now includes the next several lines from what had been the text of the next page of the document.

4

to be "hard to credit . . . , especially as [] counsel have properly double spaced their filings in many of their other cases"); *Zuckerman v. GW Acquisition LLC*, 2021 WL 4267815, at *3 n.2 (S.D.N.Y. Sept. 20, 2021) (same). Accordingly, this Court must reject Plaintiff's efforts to skirt, if not evade, the page limitations through the use of "24 Point" spacing. *See, e.g., Colon v. Twitter, Inc.*, 2019 WL 13060895, at *2 (M.D. Fl. Dec. 2, 2019) (citing cases holding that 24 point type is not double spaced); *CafeX Communications, Inc. v. Amazon Web Servs.*, No. 17-cv-1649 (S.D.N.Y. Mar. 30, 2017) (finding party that filed brief with 24 point spacing rather than double spacing was "deliberate[ly]" "flouting . . . this Court's Individual Rules . . . to gain some slight advantage in this litigation").

### B. Footnotes

The second issue before the Court is Duke's placement of citations that would more typically appear in the text in footnotes, presumably to save space because footnotes are single spaced. Although it is apparent to the Court that Duke used this tactic to save space, it does not view the prevalence of footnotes in the same vein as Duke's use of "24 Point" type. First, the use of footnotes, unlike the different spacing, is not hidden but readily seen. Also, Duke's Memorandum contains a mix of citations of authority in the text and footnotes. Finally, the Court did not impose any specific requirements on the Parties related to footnotes. So, while the Court prefers that citations to the record or legal authority appear in the text – and fully understands that Duke's intent in doing otherwise was not prompted by any intent to make its Memorandum easier to read but rather to include more argument – the Court does not find as much fault with Duke's conduct with respect to footnotes.

However, for Duke's Reply brief, the Court will require all citations, other than those appearing in and relating to the text of a proper footnote, to appear in the text of the brief (which

5

is not only the correct location but most helpful to the Court). *See* The Bluebook: A Uniform System of Citation B1.1(Columbia Law Review Ass'n et al. eds., 20th ed. 2016) ("In non-academic legal documents, such as briefs and opinions, citations generally appear within the text of the document immediately following the propositions they support.").

    **C.    Uncited Exhibits**

The next issue with respect to Duke's submission is its filing of numerous exhibits that were not cited in Duke's memorandum. The Court views this as the most egregious problem with Duke's filing because it substantively affects both the Court's consideration of the merits and Defendants' response to Duke's motion. In fact, the Court cannot conceive of any legitimate, productive purpose[5] for the filing of more than 200 exhibits that Duke did not deem worthy of citation in its Memorandum. Surely, Duke does not ask or expect the Court to read all 200 exhibits spanning thousands of pages, including entire deposition transcripts, with no context or direction as to how or why Duke contends the exhibit supports its motion. *See Propst v. HWS Co.*, 148 F. Supp. 3d 506, 511 n.1 (W.D.N.C. 2015) (Rejecting party in effect asking "this Court to read everything it has filed"); *Seaman v. Duke Univ.,* 2018 WL 10446957, at *1 (M.D.N.C. June 6, 2018) (holding that "the Court has no duty to and does not scour the record to located uncited evidentiary support for a party's factual assertions"). Thus, the result of dumping into the record such a huge number of exhibits untethered to Duke's Memorandum would be to distract, delay or confuse Defendants in their preparation of a response or, worse, intentionally obscure an exhibit

---

[5] There are very limited circumstances in which one or a very small number of exhibits might be filed even though the exhibit is not specifically cited in a brief, including, but not limited to, publicly available exhibits or other exhibits filed only for general context (not in support of arguments or a factual recitation) or exhibits which a party reasonably expects to be cited by the opposing party and includes only so that all its reply exhibits are already filed with the Court.

6

that Duke intended to cite for the first time in its Reply. Of course, none of those purposes are permissible.

Accordingly, the Court will not consider any exhibit filed by Duke that has not been specifically cited in its Memorandum. Further, Duke is directed to promptly file with the Court a supplemental appendix that includes only those exhibits cited in its Memorandum.[6] Similarly, Defendants are prohibited from filing any exhibits not cited in their responsive memorandum.

### D. Seeking Court Involvement Prematurely and Improperly

The final challenge by Defendants is to the timing, means and method by which Duke brought these issues to the Court. The Court agrees with Defendants that Duke acted improperly, in at least two respects. First, it is important for parties to make a real good faith effort to resolve their differences on disputed issues, particularly ones that involve procedural matters, prior to involving the Court. By unilaterally ending discussions and coming to the Court rather than responding to Defendants directly, Duke failed to fully satisfy its obligation under Local Rule 7.1(b) to meet and confer to resolve areas of disagreement.

Second, in racing to the Court with an informal letter in an effort to present its side of the dispute in advance of Defendants' likely motion to strike, Duke failed to comply with the Court's well established process that all requests for relief should be brought to the Court by a properly filed motion. While there may be some limited exceptions, this requirement certainly encompasses all requests related to disputed issues that are soon to be the subject of a court filing by another party. Moreover, the filing of written motions is not merely a procedural formality but importantly

---

[6] The Court does not by this Order strike any of the filed exhibits from the record. However, the Court will not entertain any motion to seal any of the uncited exhibits. Therefore, if Duke does not itself withdraw an exhibit then the exhibit will be unsealed when the Court unseals the Memorandum, which the Court has allowed to be filed provisionally under seal.

ensures that all disputes are in the public record as well as governed by clear rules on the timing of responses, etc. that are absent when parties simply ask the Court for relief outside of a filed motion. Therefore, although the Court has on occasion resolved issues outside of a filed motion in a pragmatic effort to decide minor issues promptly, Duke's conduct here goes well beyond a proper request for the Court to avoid formality in the interests of efficiency or avoidance of unnecessary costs.

### E. Appropriate Remedies

Having determined that Duke's Memorandum violated the CMO's briefing requirements, the Court must order an appropriate remedy. With respect to uncited exhibits, the Court will not consider, and Defendants need not respond to, any exhibit that has not been specifically cited in Duke's Memorandum. Further, neither party is permitted to file any uncited exhibits in support of their future briefs.

With respect to Duke's Memorandum, the Court has already read the Memorandum so requiring that the Memorandum be rewritten (and presumably shortened) is not an effective sanction. The bell cannot now be unrung. However, to even the playing field, the Court will allow Defendants to use "24 Point" spacing as well as a mix of in text and footnote citations in its responsive memorandum, within the same page limitations. The Court declines Defendants' suggestion that the Court should now change the rules to set a specific word count rather than a page limit on their brief. While some courts effectively use word counts to limit the scope of briefing, now using those restrictions here could create new disputes, which the Court does not want to engender. Permitting Defendants to prepare their brief like Duke's fairly puts the Parties on equal footing. Moreover, as an additional sanction, the Court will extend the deadline for

8

Defendants to file their response to Duke's motion for summary judgment by four days, which should more than compensate for any delay or uncertainty related to this dispute.

Finally, the Court has considered but for now has decided not to impose further sanctions on Duke or its counsel, including rescinding the enlargement of pages permitted for Duke's Reply brief. The Court's paramount goal and primary focus is to reach a correct judgment on the merits of the Parties' claims, counterclaims, and defenses. Reducing the pages previously allowed for the Parties to present their arguments risks undermining that goal. However, if Duke again attempts to manipulate its briefing in contravention of the Court's rules then the Court will not hesitate to require it to both conform its briefing to the requirements and limit the conforming brief to lower page limitations.

## II.  ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants shall be permitted to use "24 Point" spacing and a "mix" of in text and footnote citations in preparing its response to Plaintiff's Motion for Summary Judgment;

2. The Court will not consider any exhibit filed in support of or in opposition to a motion which is not properly cited in the party's memorandum of law;

3. Duke is directed to file with the Court no later than April 12, 2022 a supplemental appendix that includes only those exhibits cited in its Memorandum (Doc. No. 194);

4. The deadline for the filing of Defendant's brief in response to Plaintiff's Motion for Summary Judgment is extended to April 22, 2022;

5. Plaintiff's Reply brief must be prepared in strict accordance with the holdings of this Order, including the use of standard "double spacing" and placement of all

citations, other than those appearing in and relating to the text of a proper footnote, in the text of the brief immediately following the propositions they support; and

6. Except as ordered, the page limitations and other requirements related to memoranda in support or in opposition to summary judgment shall remain the same.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: April 8, 2022

Kenneth D. Bell
United States District Judge