IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DUKE ENERGY CAROLINAS, LLC,<br><br>Plaintiff/Counter-Defendant<br><br>vs.<br><br>NTE CAROLINAS II, LLC, NTE CAROLINAS II HOLDINGS, LLC, NTE ENERGY LLC, NTE SOUTHEAST ELECTRIC COMPANY, LLC, NTE ENERGY SERVICES COMPANY, LLC, and CASTILLO INVESTMENT HOLDINGS II, LLC<br><br>Defendants/Counterclaimants/ Plaintiffs<br><br>vs.<br><br>DUKE ENERGY PROGRESS, LLC, AND DUKE ENERGY CORPORATION<br><br>Defendants. | Civil Action No. 3:19-cv-515<br><br>**MEMORANDUM IN SUPPORT OF NTE'S MOTION *IN LIMINE* REGARDING (1) STATEMENTS MADE DUIRING SETTLEMENT DISCUSSIONS; (2) STATEMENTS REGARDING NTE'S FINANCIAL CONDITION; AND (3) STATEMENTS REGARDING THE KILLINGLY PROJECT** |

NTE[1] respectfully submits this memorandum of law in support of its motion *in limine* to exclude evidence or argument concerning (1) statements made by NTE representatives during settlement negotiations; (2) statements regarding NTE's financial condition; and (3) statements regarding a separate power plant project in Connecticut (the "Killingly Project").

---

[1] As used herein, "NTE" refers collectively to Defendants/Counterclaim Plaintiffs NTE Carolinas II, LLC, NTE Carolinas II Holdings, LLC, NTE Energy, LLC, NTE Energy Services Company LLC, and Castillo Investment Holdings II, LLC. "Duke" refers collectively to Plaintiffs/Counterclaim Defendants Duke Energy Progress LLC, Duke Energy Corporation, and Duke Energy Carolinas LLC.

*First:* at Duke's request, NTE has agreed not to introduce statements made *by Duke* during settlement discussions, but Duke refuses to accept a reciprocal rule. For whatever reason, it refuses to agree not to introduce statements made *by NTE* during those very same meetings. Duke's position is illogical and prejudicial. Accordingly, NTE moves pursuant to Federal Rules of Evidence 401, 403 and 408, to exclude all evidence concerning statements made during settlement discussions.

*Second*: Duke has stated that it "intends to introduce statements . . . referencing NTE"s financial condition as a reason why NTE could not or would not pay Duke." This evidence is both irrelevant and prejudicial. The issue to be tried is whether or not NTE breached the parties' contract. If a breach occurred, *why* a party breached is irrelevant. Accordingly, evidence of NTE's financial condition—which amounts to an argument as to NTE's motive for breach—is irrelevant, and should be excluded under Rules 401 and 403. In the alternative, if Duke does introduce such evidence, NTE submits that it will have "opened the door" to a full examination of why NTE was (and is) in poor financial condition. NTE would therefore be entitled to present a full explanation of how Duke's actions have crippled its ability to conduct business in the Carolinas.[2]

*Third:* Duke seeks to introduce evidence concerning a project NTE worked on for several years to build a power plant in Killingly, Connecticut. Matters relating to the Killingly Project— a separate project that did not involve Duke—are irrelevant.

## DISCUSSION

The Court is familiar with the background of this case. For purposes of this motion, it is

---

[2] Whether or not Duke's actions are legally actionable is a separate question from whether those actions actually have, as a matter of fact, harmed NTE. As the Court is aware, NTE has abundant evidence that it has been injured by Duke's conduct. Indeed, Duke has never taken the position that this harm did not occur—it has just claimed that its conduct did not give rise to liability under the antitrust laws and state unfair competition laws.

only necessary to describe, briefly, the evidence concerning one specific meeting, a settlement meeting that occurred on August 6, 2019.

NTE suspended the parties' contract—the Large Generator Interconnection Agreement ("LGIA")—on May 15, 2019. Beginning on May 22, 2019, Duke began asserting that NTE was in breach of that contract. Following a protracted exchange of correspondence, the parties met in person on August 6, 2019. The witnesses' recollections of the meeting vary somewhat, but the basic outline of what happened is clear.

According to Duke, at this meeting, NTE's Michael Green "asserted that NTE had no money to cure the breaches under the LGIA." Am. Compl. ¶ 98 (ECF No. 114). Duke also contends that Mr. Green stated that NTE had allocated funds it had raised for the proposed plant in Reidsville , N.C. to the Killingly Project. *Id.* ¶¶ 100-103.

Mr. Green, not surprisingly, has a different recollection. Here is his testimony:

Q. Did you indicate at that meeting that NTE had used all of its available funds to pay for Killingly?

A. No, I did not.

Q. Did you discuss Killingly at all at that meeting?

A. I discussed the equity- and debt-raise at Killingly.

Q. Did you indicate at that meeting that NTE did not have the money to pay Duke under the LGIA?

A. No, I did not.

Q. Do you remember anyone from NTE making a statement like that?

A. I do not.

Q. Did you say anything at all at that meeting about NTE's financial situation?

A. Ann Warren said that NTE owed them $30 million, but she would settle for $9 million, and she asked me if I was ready to write her a check right then for $9 million. I did say, no, I'm not in a position to write you a check for $9 million. I don't know what the basis of $9 million is. I did make that

> comment.
>
> Q. Do you say anything else about NTE's financial situation?
>
> A. I don't recall anything else.
>
> Q. Do you recall anyone else from NTE discussing NTE's financial situation at that meeting?
>
> A. I don't recall anybody else saying anything.

Green Tr. 268:19-270:7.

Equally unsurprisingly, Ann Warren—Duke's lead representative at the August 6 meeting—recalls the meeting differently, but what is undisputed is that the conversation at issue was part of a settlement discussion. Here is Ms. Warren's testimony:

> And then -- and then I remember the outside counsel for NTE directed the question to me and said that they had a legal offer of settlement to provide to us as a company today. And I responded -- you know, as counsel to the company -- to that legal offer of settlement. And I said something like, Okay, what is the offer of settlement?
>
> And I had felt comfortable coming into the meeting that I had the authorization from the company to respond to offers of settlement from a legal perspective. And I responded to the offer that was provided, which was that NTE would be willing to pay Duke money if and when it received any money in the future.
>
> And I remember responding to NTE's outside counsel asking a clarifying question about the time frame in which NTE expected to get any money, and I remember him responding that he said he didn't know, so I remember rejecting the offer of settlement.

Warren Tr. 107:16-108:8.

All evidence of discussions at August 6, 2019 meeting should be excluded.

*First:* Under Rule 408, evidence of "conduct or statements made during compromise negotiations" is inadmissible. It should be undisputed that whatever was said on August 6, 2019 were "statements made during compromise negotiations."

*Second:* More generally, the subjects that Duke seeks to introduce—NTE's alleged financial condition and matters relating to the Killingly Project—are irrelevant. The issue to be

4

Case 3:19-cv-00515-MEO-WCM   Document 232   Filed 07/08/22   Page 4 of 8

tried in this case is narrow: was NTE in breach of the LGIA no later than May 22, 2019, the date on which Duke first claims to have given notice? Statements about NTE's financial condition do not bear on whether or not the breach actually occurred. *See Edens v. Goodyear Tire & Rubber Co*, 858 F.2d 198, 203 (4th Cir. 1998) ("In an ordinary breach of contract case, the motive of the breaching party is irrelevant to a determination of damages."). Matters relating to the Killingly Project are even farther afield. Indeed, were Duke to introduce matters relating to the Killingly Project—a completely separate project handled by a separate NTE management group—it would lead to a classic "mini trial" on a collateral issue. All evidence regarding the Killingly Project should be excluded.

*Third:* the evidence Duke seeks to introduce is unfairly prejudicial. Duke seeks to portray NTE as a "deadbeat"—a party that does not pay its bills. This is classic character assassination—precisely the type of evidence that is barred by Rule 403. Jurors, reasonably, do not like people who do not pay what they owe; but that is a different question than whether a debt is owed to begin with. As above, whether or not NTE breached a legal obligation to pay a particular amount under a particular provision of a contract does not turn on whether or not NTE had money in the bank. Even if Duke were to prove that NTE had no money, it would not prove that NTE was required to pay a particular sum on a particular day.

*Fourth:* What is good for the goose is good for the gander. As part of the meet and confer process, Duke asked NTE to confirm that it would not offer evidence concerning (a) "NTE's current financial condition" and (b) "settlement offers/demands made (at Aug. 6, 2019 meeting or otherwise.)" *NTE agreed*. Ex. A (email thread). Duke's request reflects its recognition that these matters are irrelevant and inadmissible. Having obtained NTE's agreement to exclude such matters it has no legitimate basis for seeking to introduce them itself.

## CONCLUSION

NTE respectfully requests entry of an order excluding evidence of (1) settlement discussions between the parties; (2) NTE's financial condition; and (3) the Killingly Project.

*Signature page follows*

Respectfully submitted, this the 8th day of July, 2022

/s/ *Marguerite S. Willis*
Marguerite S. Willis, NC Bar No. 8045
*mwillis@nexsenpruet.com*
Kirsten E. Small, NC Bar No. 37057
*ksmall@nexsenpruet.com*
Nexsen Pruet, PLLC
227 West Trade Street, Suite 1550
Charlotte, NC 28202
(704) 339-0304

John F. Baughman, pro hac vice
*jbaughman@jfblegal.com*
Daniel A. Schwartz, pro hac vice
*dschwartz@jfblegal.com*
Livia Fine, pro hac vice
*lfine@jfblegal.com*
Ian D. Robertson, pro hac vice
*irobertson@jfblegal.com*
JFB Legal PLLC
500 East Main Street, Suite 1400
Norfolk, VA 23510
(347) 241-6347

Douglas E. Litvack, pro hac vice
*dlitvack@jenner.com*
Suedeen G. Kelly, pro hac vice
*skelly@jenner.com*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington DC 20001-4412
(202) 639-6000

Christopher G. Renner, pro hac vice
*crenner@jenner.com*
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350

*Attorneys for NTE*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 8, 2022, NTE filed the foregoing memorandum in support of its motion *in limine* to exclude evidence or argument concerning (1) statements made by NTE representatives during settlement negotiations; (2) statements regarding NTE's financial condition; and (3) statements regarding the Killingly Project via CM/ECF, which will serve all counsel of record.

*s/ Marguerite S. Willis*
Marguerite S. Willis, NC Bar No. 8045
mwillis@nexsenpruet.com
Nexsen Pruet, PLLC
227 West Trade Street, Suite 1550
Charlotte, NC  28202
(704) 339-0304